White v. State.

CHARLES WHITE V. STATE OF NEBRASKA.

[FILED DECEMBER 31, 1889.]

1. **Criminal Law**: COMPLAINT: CAPTION. A title is no part of a complaint, made before a magistrate, charging a person with a criminal offense, and in a complaint charging M. with having committed the crime of larceny, the words "State of Nebraska v. M. and W.," placed in the upper left hand corner of the paper upon which such complaint is written, *held*, not sufficient to make such complaint a joint one against M. and W.

2. ———: ———. A complaint under oath, made before a magistrate, *held*, necessary to give such magistrate jurisdiction to make a preliminary examination of a person accused of a criminal offense.

3. **An Examination**, made by a magistrate, of a person accused of crime, where the magistrate has not jurisdiction, is not a "preliminary examination therefor, as provided by law," in the sense of those words as used in section 585 of the Criminal Code.

4. **An Information**, filed in the district court by the county attorney, against an accused person for an offense for which said accused person had not had a preliminary examination, as provided by law, confers no jurisdiction upon said district court to try and punish said accused person for such offense, unless in the excepted cases provided for in section 585 of the Criminal Code.

ERROR to the district court for Douglas county.   Tried below before GROFF, J.

*Winfield S. Strawn,* for plaintiff in error:

The state had no right to proceed on mere information by the county attorney, and without preliminary examination. (4 Am. & Eng. Encyc. of Law, 730; Cr. Code, secs. 286, 288, 300, 585; *People v. Smith,* 25 Mich., 497; *People v. Chapman,* 62 Id., 290; *State v. Louver,* 26 Neb., 757.) The caption of the complaint, or information, determines nothing. (*State v. Davis,* 41 Ia., 311; *State v.*

*Wyatt,* 76 Id., 328.) The sole pretext for holding defendant to answer was a charge of larceny, while the information charges burglary, and the motion in arrest of judgment should have been, for this reason, sustained.

·*William Leese, Attorney General,* for the state:

The transcript of the proceedings before the police judge shows that there was a preliminary examination. No objection was made to jurisdiction until the motion in arrest of judgment, when it was too late. The question should have been raised by a plea in abatement. (*Cowan v. State,* 22 Neb., 519.) The information charges larceny—not · burglary, and the verdict was for the former.

COBB, J.

The plaintiff in error and one Frank Miller were jointly informed against in the district court of Douglas county for burglariously entering a dwelling house and stealing therefrom a quantity of silverware. Miller pleaded guilty; White pleaded not guilty, was tried and convicted. He presented a motion for a new trial, which was overruled. Immediately thereafter, and before sentence, he presented a motion in arrest of judgment, which was overruled, and he was thereupon sentenced to punishment in the state's prison.

The following are the grounds stated in the last named motion:

"1. That the county attorney who filed the information had no legal authority to inquire into the offense alleged in this court, for the reason of its not being within the jurisdiction of the court.

"2. That no information was ever filed against this defendant, and preliminary examination had thereon by some magistrate or competent authority, and there has been no indictment or presentment of this defendant by any grand jury.

"3. That the only pretense there has ever been of giving this defendant a preliminary examination was for another and different crime than that for which the county attorney has informed against him, and on which he was tried in this court and in this case.

"4. That he never was informed against and had any preliminary examination for or on the charge upon which the state has assumed to put him on trial in this court, nor was he ever presented to this court on such charge by any grand jury.

"5. That he has been, and by the proceedings in this case is sought to be, deprived of his liberty without due process of law."

To the overruling of said motion the said Charles White excepted and brings the cause to this court on error.

The plaintiff in error assigns twenty-seven errors. They will not be set out here, but such of them only as it may be deemed necessary to discuss will be stated as we proceed.

It appears from the record that on the 12th day of June, 1888, one Duff Green, who otherwise appears to have been a policeman, made a complaint before the police judge of the city of Omaha against one Frank Miller for grand larceny, in stealing, taking, and carrying away from the premises, 818 Park Place, in the city of Omaha, certain silverware, describing it, of the value of $94, the property of E. J. Lalk. The name of Charles White does not appear in the charging part of this complaint, but, contrary to the usual form, just below the venue there was a title in which the name " Charles White" does appear after that of "Frank Miller, alias Frank Wilson." The appearance of the name of plaintiff in error upon the paper in that manner has, as I conceive, no legal significance. It also appears that a joint warrant was issued by the said police judge for the arrest of Frank Miller, alias Frank Wilson, and Charles White; that they were brought before the police judge, whereupon Wilson waived an examination.

and White was examined and committed. Afterwards, on the 15th day of June next thereafter, the county attorney of said county presented a joint information in the district court against the said Frank Miller, alias Frank Wilson, and Charles White for burglary and larceny, in breaking and entering, in the day time, the dwelling house of E. J. Lalk with intent to steal, etc., and stealing certain articles of silverware, in said information described, of the value of $94. The plaintiff in error raised the question of the jurisdiction of the district court to sentence him to punishment for the felony for which he was tried by his motion in arrest.

Section 493 of the Criminal Code provides that "A motion in arrest of judgment may be granted for either of the following causes: First—That the grand jury, which found the indictment, had no legal authority to inquire into the offense charged by reason of its not being within the jurisdiction of the court," etc.

At the time of the adoption of the Code containing the section above in part quoted there was but one method of bringing a criminal action of the grade of felony within the power and jurisdiction of a court for trial and the punishment of an offender; that was by indictment by a grand jury. Then, although, as now, the law provided for the making of a complaint before a magistrate against persons accused of crime, for the arrest of such persons, the bringing of them before such magistrate or some other magistrate of the county, and for the examination and holding to bail, or committing of such accused person; yet such proceedings were not, in a strictly legal sense, a necessary part of the prosecution of such person for the crime; but a grand jury could, and still can, for that matter, without regard to previous charge, arrest on examination, receive and act upon original charges made by one of their own number, or any other person who may desire to come before them for that purpose, against any person, and upon suffi-

cient proof find and present an indictment, and upon the arraignment of the person thus indicted, except in cases where the person indicted has been brought within its jurisdiction, by virtue of extradition proceedings, from a foreign state or country, will not inquire into the regularity of any proceeding in reference to such accused person antecedent to the finding and presentation of the indictment; or, perhaps, I should also except the legality and regularity of the organization of the grand jury itself.

The act of March 9, 1885, gave to the several courts of this state jurisdiction to hear, try, and determine prosecutions upon informations for crimes, misdemeanors, and offenses. Section 8 of said act provides that "no information shall be filed against any person for any offense until such person shall have had a preliminary examination therefor, as provided by law, before a justice of the peace or other examining magistrate or officer, unless such person shall waive his right to such examination," with a proviso that such limitations shall not apply to fugitives from justice. Here is an important departure from the course of procedure in prosecutions for criminal offenses. Formerly, as we have seen, it was the indictment that gave jurisdiction of the offense—in the sense in which we are now speaking of it— to the court to try the offender. Now, in proceeding under the said act, it is the information for such offense, and the "preliminary examination therefor, as provided by law," that gives the court "the same power and jurisdiction to hear, try, and determine that it possesses when proceeding upon an indictment." It therefore becomes necessary to determine what is provided by law in respect to the preliminary examination of persons for offenses.

Section 283 of the Criminal Code provides that "every sheriff, deputy sheriff, constable, marshal, or deputy marshal, watchman, or police officer shall arrest and detain any person found violating any law of this state, or any legal ordinance of any city or incorporated village, until a war-

rant can be obtained." Section 284 provides that "Any person not an officer may, without warrant, arrest any person if a petit larceny or a felony has been committed, and there has been reasonable ground to believe the person arrested guilty of such offense, and may detain him until a legal warrant can be obtained." Section 285 provides that "justices of the peace, mayors of cities and villages, police judges and probate judges shall have power to issue process for the apprehension of any person charged with a criminal offense," and section 286 provides that " Whenever a complaint in writing and upon oath, signed by the complainant, shall be filed with the magistrate, charging any person with the commission of an offense against the laws of this state, it shall be the duty of such magistrate to issue a warrant for the arrest of the person accused if he shall have reasonable grounds to believe that the offense charged has been committed." The succeeding eight sections are devoted to provisions for the giving of security for costs, the contents of the warrant, its execution, the detention of the prisoner in jail, the bringing of him before the proper magistrate, and other details. Section 295 provides that "when any offense is committed in view of any magistrate, he may, by verbal direction to any sheriff or constable, or marshal or other proper officer, or, if no such officer be present, then to any citizen, cause the offender to be arrested and kept in custody for the space of one hour, unless he shall sooner be taken from such custody, by virtue of a warrant issued on complaint under oath ; but a person so arrested shall not be confined in jail nor put upon trial until arrested upon such a warrant." The "legal warrant" thus spoken of in the 283d and 284th sections, and the "warrant" spoken of in the 295th section, is the same as the process provided for by section 285, and which can only be issued against persons charged, upon oath, with the commission of such offenses. Such charge, or complaint as it is usually called, is that which gives the magistrate

jurisdiction of the offense, and to make a preliminary examination of the offender. And no person against whom no such charge has been made can, in contemplation of law, be said to "have had a preliminary examination therefor as provided by law."

We have seen that under the statute of 1885 an information gives the district court the same jurisdiction of an offense and to try and punish the offender that an indictment does; but unlike an indictment the information depends for its legal existence upon a preliminary examination of the offender, and this examination must have been "as provided by law." The law, as we have seen, provides, as a necessary and indispensable part of or antecedent to such examination, that the accused should have been charged upon oath with the commission of the offense.

The statute of Michigan providing for the arrest and examination of offenders and the taking of bail is somewhat more comprehensive than our own. It makes it the duty of the magistrate taking an examination to take down in writing the depositions of the witnesses, but does not, in terms, require the magistrate upon the examination to cause the depositions of the witnesses as taken down by him to be read over to them before signing; but, as was said by the court in the case hereafter cited, "Such is the common practice and should be required."

The case of *People v. Chapman*, 62 Mich., 280, came before the supreme court of that state in 1886. Chapman had been tried and convicted upon information of a most heinous and revolting crime, and brought the case upon error. The supreme court in the opinion, after ruling every point arising upon the merits against the accused and showing that he was guilty beyond a peradventure, says (p. 288): "A serious difficulty arises, however, when we consider the manner of the preliminary examination of the accused upon which he was held to trial in the circuit.

"It appears, without any contradiction, that during the

examination of the respondent, and at its close, before Irving T. Wood, a justice of the peace, residing in Brownstown, the depositions of the witnesses were not subscribed by them. The depositions so taken by the justice were returned by him to the circuit court without signing by the witnesses or reading of their testimony to them. The examination closed January 15, 1884, and the return was filed in the county clerk's office January 24, 1884. The defect was discovered by the prosecuting attorney some time in March 1884, when the depositions were taken by the sheriff to the justice and some of the witnesses seen at their homes and other places and their signatures procured to their depositions, but without reading their testimony or having it read to them. The justice attached his jurat certifying that the same was sworn to and subscribed on the 15th day of January, 1884. No oath was administered to any of them at the time of signing. * * * During the trial, upon a showing of the facts above stated, the defendant's counsel moved to quash the information upon the ground that there had been no preliminary examination as required by statute and no waiver of the same. * * * The information was not filed in this cause until after the depositions had been signed by the witnesses and returned to the clerk's office by the justice. In this only does it differ from *People v. Smith,* 25 [Mich., 497]. In that case the depositions were unsigned when the information was filed, and at the time of trial and conviction of the accused. The statute does not, in express terms, require the depositions taken down by the magistrate upon the examination to be read over to the witnesses before signing, but such is the common practice, and should be required. (How. Stats., sec. 9469.)

"If the language of the witness, as taken by the magistrate, is not read to the witness, or by him before signing, for the purpose of correction, there can be no certainty that the deposition of the witness so written and signed is as it was actually stated under oath. * * *

"But besides this the defect is radical in this case. The defendant was held to trial without any preliminary examinations under the statute. We do not mean to hold that the neglect to have one or more witnesses sign their depositions would void an examination, provided there was sufficient testimony to bind him over from witnesses who had subscribed their depositions. But here Chapman could not have been held if the testimony of his wife had been expunged from the record. * * * Nor do we think, after the justice had made his return, in January, to the circuit, that he was authorized to procure the signatures of the witnesses in March afterwards. * * * It follows that the conviction must be set aside and the respondent discharged from custody."

Upon the question of jurisdiction the case at bar is a far stronger one than the above. There the want of jurisdiction in the circuit court, to try and punish Chapman upon the information, arose out of a mere irregularity in the preliminary examination; for that reason he had not had a preliminary examination, according to law. But here no magistrate has ever had jurisdiction to give White a preliminary examination, for the reason that he has never been charged on oath with the commission of an offense, and without that, as we have seen, no legal process could be issued against him, nor could he be placed upon trial, preliminary or final. The conviction, therefore, cannot stand. I do not think, however, that it follows that the accused must necessarily be discharged from custody. If the authorities of Douglas county claim the right to take him back there, and a complaint under oath is made against him before a magistrate for the commission of the offense, I see no reason why they may not do so.

The judgment of the district court is reversed and the case remanded.

REVERSED AND REMANDED.

THE other judges concur.